IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| MICHAEL BRIAN NORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 9:18-cv-2973-DCN |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| ANDREW SAUL, Acting Commissioner of Social Security,[1] | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

This matter is before the court on Magistrate Judge Bristow Marchant's report and recommendation ("R&R") that the court affirm Acting Commissioner of Social Security Andrew Saul's ("Commissioner") decision granting claimant Michael Brian Norris's ("Norris") application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Norris filed objections to the R&R. For the reasons set forth below, the court adopts the R&R and affirms the decision of the Commissioner.

## I. BACKGROUND

Unless otherwise noted, the following background is drawn from the R&R.[2]

**A. Procedural History**

Norris filed an application for DIB on October 3, 2016 and an application for SSI on December 16, 2016. The Social Security Administration ("the Agency") denied Norris's application both initially and on reconsideration. Norris requested a hearing

---

[1] Andrew Saul is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is automatically substituted for Nancy A. Berryhill, former Commissioner, as the defendant in this lawsuit.

[2] Neither party objects to the R&R's recitation of the facts.

before an administrative law judge ("ALJ"), and ALJ James M. Martin presided over a hearing held on June 11, 2018. In a decision issued on July 9, 2018, the ALJ determined that Howard was disabled and entitled to DIB and SSI. The ALJ, however, disagreed with Norris's alleged disability onset date. In his applications, Norris listed his disability onset date as the day he stopped working, July 26, 2016.[3] Norris was forty-eight years old at the time. The ALJ, however, found Norris's disability onset date to be November 21, 2017, the day of his fiftieth birthday. Norris requested Appeals Council review of the ALJ's decision, which became the final decision of the Commissioner when the Appeals Council denied further review on October 19, 2018.

On November 2, 2018, Norris filed this action seeking review of the ALJ's decision. ECF No. 1. The magistrate judge issued an R&R on October 17, 2019, recommending that this court affirm the ALJ's decision. ECF No. 17. Norris filed objections to the R&R on October 29, 2019, ECF No. 18, to which the Commissioner responded on November 12, 2019, ECF No. 20. Thus, the matter is now ripe for the court's review.

**B. Medical History**

Because the parties are familiar with Norris's medical history, the court dispenses with a lengthy recitation thereof and instead briefly recounts those facts material to its review of Norris's objections. In March of 2016, Norris felt a pop in his shoulder while lifting a 40-to-50-pound roll of film at his job. In the following months, Norris sought treatment for his shoulder and complained that the pain had spread, radiating down his

---

[3] The record indicates that Norris briefly returned to work in January of 2017 doing inventory for Car Max. However, he returned home after about a week when he claims his injuries made working too painful.

back and into his knee. Over the next two years, Norris sought various treatments, including surgeries, with a number of physicians, nurses, and physical therapists but reported that his condition only worsened.

### C. ALJ's Decision

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The Social Security regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Under this process, the ALJ must determine whether the claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an impairment contained in 20 C.F.R. § 404, Subpt. P, App'x 1 ("the listings"), which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him or her from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his or her remaining physical and mental capacities (defined by his or her residual functional capacity) and his or her vocational capabilities (age, education, and past work experience) to adjust to a new job. See 20 C.F.R. § 404.1520; Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). The applicant bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). "If an

applicant's claim fails at any step of the [sequential evaluation] process, the ALJ need not advance to the subsequent steps." Id. (citing Hunter, 993 F.2d at 35).

To determine whether Norris was disabled from his alleged onset date of July 26, 2016 until the June 11, 2018, the date of his hearing, the ALJ employed the statutorily required five-step evaluation process. At step one, the ALJ found that Norris did not engage in substantial gainful employment during the period between his alleged onset date and his date of last insured. Tr. 36. At step two, the ALJ determined that Norris suffered from the severe impairments of degenerative disc disease of cervical spine, degenerative disc disease of the lumbar spine status post fusion, and degenerative joint disease of the right shoulder. Tr. 36–39. At step three, the ALJ found that Norris's impairments or combination thereof did not meet or medically equal one of the impairments listed in the listings between his alleged disability onset date and the date of his hearing. Tr. 39–42. It is the analysis in step three that is the subject of this controversy.[4]

## II. STANDARD

This court is charged with conducting a de novo review of any portion of the Magistrate Judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the Magistrate Judge. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985). The recommendation of the Magistrate Judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976).

---

[4] Norris does not object to the ALJ's findings at steps four or five.

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted).

Although the district court's role is limited, "it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969). Further, although the court will not reweigh the evidence considered, the Commissioner's findings of fact are not binding where they are based on an improper legal standard. Coffman v. Bowen, 829 F.2d 514, 519 (4th Cir. 1987).

### III.  DISCUSSION

Norris's complaint seeks SSI and DIB for the 16-month period between the disability onset date he alleges, July 26, 2016, and the one determined by the ALJ, November 21, 2017. The R&R recommends that this court affirm the decision of the ALJ. Norris asserts a single objection to the R&R, arguing that the ALJ, and in turn the

R&R, erred in finding that Norris's spinal condition did not meet or equal Listing 1.04A from his alleged disability onset date. Specifically, Norris asserts two related arguments: (1) that the ALJ incorrectly applied Listing 1.04A and (2) that Norris's positive straight-leg raising tests satisfy the evidentiary positive test requirement of Listing 1.04A. The court addresses each argument in turn, finding that neither merit reversal.

The listings, set out in the Social Security Administration regulations at 20 CFR § 404, Subpt. P, App'x. 1, contain various "listings of physical and mental impairments which, if met, are conclusive on the issue of disability." McNunis v. Califano, 605 F.2d 743, 744 (4th Cir. 1979); 20 C.F.R. § 404.1525. A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition "meets or equals the listed impairments." Bowen v. City of New York, 476 U.S. 467, 471 (1986). Because the listings are analyzed in step three of the evaluation process, the claimant bears the burden of demonstrating that his condition "meets or is medically equivalent to" one of the listed impairments. Kellough v. Heckler, 785 F.2d 1147, 1152 (4th Cir. 1986).

Listing 1.04A, which covers severe disorders of the spine, entitles to a claimant to a presumption that he is disabled if he shows a disorder of the spine "resulting in compromise of a nerve root [] or the spinal cord." 20 C.F.R. § 404, Subpt. P, App'x. 1, 1.04A. To make such a showing under Listing 1.04A, a claimant must show

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);[5]

---

[5] A claimant may also be entitled to a presumption that he is disabled under listing 1.04 if he satisfies the evidentiary requirements of subpart B or C. Because Norris only argues that he satisfies subpart A, however, the court need not consider subpart B or C.

Id. The Fourth Circuit has found a claimant need not show that his symptoms occurred simultaneously or in close proximity with one another but must show "[1] that each of the symptoms are present, and [2] that the claimant has suffered or can be expected to suffer from nerve root compression continuously for at least 12 months." Radford v. Colvin, 734 F.3d 288, 294 (4th Cir. 2013) (citing 20 C.F.R. § 404.1509).

In his objection, Norris argues that the ALJ "mechanically applied Listing 1.04[A]" and failed to consider "substantial portion of [the] medical records." ECF No. 18 at 2. In determining that Norris's condition did not meet or equal 1.04A's listed impairment, the ALJ found that Norris's spine condition improved after his February 2017 lumbar surgery, such that his condition did not rise to the level of severity required by Listing 1.04A for a 12-month period. In so finding, the ALJ relied on several portions of the record. For example, the ALJ noted that in February of 2017, during a post-surgery assessment after Norris's first lumbar surgery, Norris's treating physician found Norris to have normal sensation, normal muscle tone, 2/2 reflexes, 5/5 strength, normal coordination, and a normal gait. Tr. 41. Further, the ALJ noted that a second follow-up examination in May revealed similarly normal findings. Id. The ALJ also relied on neurological examinations of Norris in August and October of 2017, which showed only minor abnormalities and high motor function, sensation, and range of motion evaluations. Tr. 41–42. Norris's objection all but ignores the ALJ's reliance on these portions of the evidentiary record. Because the ALJ's finding is supported by substantial evidence, the court rejects Norris's argument that the ALJ incorrectly applied Listing 1.04A.[6]

---

[6] In his objection, Norris argues that the listings "w[ere] intended as a guideline" and should not be "mechanically applied." The merits of that contention aside, the role of this court is to analyze whether the ALJ's decision was based on the correct law and

7

Instead, Norris's objection more substantially focuses the ALJ's determination that Norris did not make a sufficient showing of positive straight-leg raising tests, as required by Listing 1.04A. Norris argues that evidence of his "positive [straight-leg raising] tests satisfy the requirements in 1.04A" because Listing 1.04A does not require evidence of positive tests in both the sitting and supine positions. ECF No. 18 at 1. The court disagrees.

Listing 1.04A requires a claimant to show evidence of "positive straight-leg raising test (sitting <u>and</u> supine)." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.04A (emphasis added). "To satisfy listing 1.04A, a claimant must show that "each of the symptoms are present." <u>Radford</u>, 734 F.3d at 294. The plain language of Listing 1.04A requires evidence of a positive test in both the sitting <u>and</u> supine positions (emphasis added). Indeed, several courts have found that evidence of a test from each position is required. See <u>Woodridge v. Colvin</u>, 2016 WL 4253971, at *5 (M.D. La. July 14, 2016), report and recommendation adopted, 2016 WL 4257051 (M.D. La. Aug. 10, 2016) (finding that ALJ did not err in requiring positive test evidence in both sitting and supine positions) (collecting cases); <u>Harris v. Colvin</u>, 2015 WL 1259403, at *14 (E.D. Va. Mar. 18, 2015) (". . . no evidence existed that Plaintiff suffered motor loss[], sensory or reflex loss or a positive straight-leg raise test in both the sitting and supine positions. . . ."); <u>Page v. Astrue</u>, 2014 WL 988825, at *12 (N.D. Ga. Mar. 12, 2014) ("Plaintiff has not cited to evidence showing . . . positive sitting and supine straight-leg raising tests."); <u>Nieves v. Astrue</u>, 2013 WL 1192013, at *7 (W.D. Tex. Mar. 21, 2013) ("As the ALJ noted, none of

---

the substantial evidence. The court finds that it was here, and Norris's blanket contention that the ALJ "mechanically applied" the listings does not give the court any reason to find otherwise.

8

the records indicate whether the test was performed and positive both sitting and supine, as required by the Listing.").

As evidence of the post-surgery improvement in Norris's condition, the ALJ noted that "there are few, if any, positive straight leg raises between February 2017 and the established onset date in November 2017. . . ." Tr. 41. To be sure, Norris presented evidence of positive straight-leg raising tests. In fact, the ALJ discussed Norris's post-surgery positive tests. The ALJ found, however, that the straight-leg tests cited by Norris did not pass muster for the purposes of Listing 1.04A because "the medical record does not indicate specifically whether the straight leg tests were sitting, supine, or both . . . ." Id. The law makes clear that such an absence in the record provides an adequate basis for an ALJ to determine that a claimant did not satisfy Listing 1.04A's evidentiary requirements. Therefore, the court finds that the ALJ did not err in relying on the absence of evidence of positive straight-leg raising tests in both the sitting and supine positions. Thus, the court finds that the ALJ's onset disability date determination was based on the correct law and the substantial evidence.

## IV.   CONCLUSION

Based on the foregoing, the court **ADOPTS** the R&R and **AFFIRMS** the Commissioner's decision.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**January 17, 2020
Charleston, South Carolina**